W. B. CLAY, *Appellant,* vs. ALFRED J. GIRDNER and MARY CHENEY CHASE, *Appellees.*

138 So. 490.

En Banc.

Opinion filed October 16, 1931.

*Shackleford, Ivy, Farrior & Shannon,* for Appellant; *Macfarlane, Pettingill, Macfarlane & Fowler,* for Appellees.

ANDREWS, Commissioner:—This appeal was taken from an order of the circuit court of Hillsborough County sustaining exceptions for impertinence to certain portions of the answer of defendant to the bill of complaint which seeks to foreclose a mortgage of $37,500.00 securing two notes dated March 1, 1929, in equal amounts of $18,750.00 and made payable in 10 years, with interest notes of $562.50 each made payable every six months.

The bill of foreclosure alleges two defaults on part of appellant; (1) Failure to pay the two first interest coupon notes of $562.50 each maturing September 1, 1929, and (2) Failure of defendant to keep the mortgaged property insured according to the covenants of the mortgage.

In answer to the first alleged default, defendant alleges that he was not in such default in the payment of the two first interest notes as would warrant the exercise of the right to accelerate the maturity of the whole debt; that while he admits that said two interest notes remained unpaid for a period of about three days beyond the ten days of grace but states that complainants are estopped to so claim acceleration of the whole debt in that during the month of August, 1929, on more than one occasion one Mrs. M. C. Fowler, acting as agent of complainants, represented to defendant that said interest notes would be due October 1, 1929, and the defendant not having the original copy of the said mortgage or notes in his possession relied upon said statement, and for the further reason that he received no notice from the bank where the notes were made pay-

able or from anyone that the same would become due September 1, 1929; that he is able, ready and willing to pay any and all notes as and when they mature which fact was well known to complainants; that negotiations looking to the payment of the whole obligation upon allowance of a cash discount were taking place through August and up to and including September 12, 1929, on which date for the first time defendant was advised that "they" would not agree to any discount as the interest was past due and they had placed the matter in the hands of their attorney, Cody Fowler, for collection; that upon receiving this information defendant made every effort to locate said notes and tendered to said attorney the full amount of said two interest notes which was "flatly" refused with the statement that the entire indebtedness had been declared due; thereupon this defendant placed with the Exchange National Bank of Tampa where the said notes were made payable, two certified checks each in the sum of $562.50 payable respectively to plaintiffs, with instructions that each be delivered upon receipt of the respective notes. Defendant further alleges that on September 14, 1929, he instituted a suit against appellees tendering the sums due September 1, 1929, and seeking to compel them to accept such tender and for general relief, but that service could not be had as defendants could not be located in the county and before service could be made by publication the present suit was instituted on September 26, 1929. The answer further alleges that the original agreement was that defendant should have 30 days of grace from date notes became due to pay before complainant could exercise his option to consider the whole mortgaged debt due, but by some oversight 10 days was inserted and without defendant's knowledge.

As to the second alleged default the defendant in his answer in substance admits that the mortgage provides that the improvements should be kept insured in the sum

of not less than $37,500.00, but that at the time he pur-
chased the complainants carried only $20,000.00 insurance
and that the latter amount was at that time and is now the
full insurable value of the property, which fact was then
well known to complainants, and notwithstanding they
falsely represented to defendant that said property could
be insured for $37,500.00, and relying on said representa-
tion, defendant agreed in said mortgage to keep the prop-
erty insured for the larger amount; that thereafter and
before complainants exercised any option to declare the
entire indebtedness due defendant made every effort to in-
crease the amount of insurance in force at the time of the
purchase but was not successful as no insurance agency
would issue any policy in excess of a total insurable value
of $20,000.00.

The answer further sets up that the conveyance to de-
fendant was made subject to a lease by Simms and Elfirs
by the terms of which lessees were to keep the said prop-
erty fully insured and defendant was informed that the
premiums were fully paid and provided for, but that de-
fendant was notified on September 5, 1929, by complain-
ant's attorney, that the policies aggregating $20,000.00,
had lapsed by reason of default of said lessees to pay the
premium; that "defendant without a moment's delay pro-
cured a policy in the amount of $20,000.00 which was the
full insurable value," and that same was delivered to at-
torney for complainants.

The exceptions for impertinence to portions of the an-
swer, the substance of which are given above, were sustain-
ed by order of the court from which appeal was taken, and
constitutes the only assignment of error.

In the case of Florida East Coast Ry. Co. v. Eno, 99
Fla. 887, 128 So. 622, in discussing a very similar issue, it
was held that if the matter contained in an answer in an
equity cause is relevant, or can influence the decision of
the suit, either as to the subject-matter of the controversy

or the relief to be sought, or if it has any material bearing on the equities asserted in the bill, it is not assailable by exceptions for impertinence. Citing Holzendorff v. Terrell, 52 Fla. 525, 42 So. 584; Trustees I. I. Fund v. Root, 63 Fla. 666, 58 So. 371; Jones v. Hiller, 65 Fla. 532, 62 So. 583; Cummer Co. v. Yager, 75 Fla. 729, 79 So. 272; Sec. 4910, Compiled General Laws of Florida, 1927; Boca Grande Co. v. Blanding, 77 Fla. 536, 81 So. 886; Hunt v. Turner, 54 Fla. 654, 45 So. 509.

In the above case of Florida East Coast v. Eno, it was also held that

"In a chancery cause, an exception to portions of an answer as for 'impertinence' is not the proper method of testing the sufficiency *in substance* of the answer as a defense in bar to the bill. If an answer is in substance bad as a defense and raises no issue requiring proof of the allegations of the bill, the proper practice is to set the cause down for hearing on bill and answer."

In the case of Holzendorff v. Terrell, supra, it was held that to justify an exception for impertinence it must clearly appear that the matter excepted to is wholly irrelevant, and that an exception to an answer should be overruled if it be too broad or if the sustaining of it would mutilate the remainder of the answer.

Applying the above rules that an answer is not subject to exceptions for impertinence where the matters contained in the answer can influence the decision of the suit or has any material bearing on the equities asserted in the bill, it becomes necessary to determine whether the portions of the answer excepted to are material as bearing on the equities asserted in the bill, or should necessarily influence a decision on the equities of the suit.

If the alleged negotiations with reference to discounting the whole indebtedness was prolonged until September 12, and on that date defendant was advised for the first time that complainants would not allow any discount and that they had already placed the matter in the hands.

of their attorney "for collection," such statement, in the absence of any notice, direct or constructive, that plaintiff had elected to "exercise the option" to declare the whole indebtedness due, was insufficient to preclude payment, if the defendant was entitled to the privilege of taking up the two first past due notes any time before the complainant "exercised the option" to declare the whole indebtedness due.

While persons generally may make whatever contracts they desire and, if otherwise legal, they will be enforceable though resulting in a bad bargain for the complaining party, under the conditions of this case where no payment on the principal was to be made until the tenth year and where it is alleged that defendant's tender of the amount to pay the first semi-annual interest notes, though in default for only three days, was refused, it cannot be said that such portion of the answer has no material bearing on the equities asserted in the bill.

It is also observed that there is nothing in the notes or mortgage waiving presentment and notice, nor anything to indicate that notice was ever given to defendant that payment was due at the bank named in the mortgage and notes, or elsewhere; while the answer alleges that none was given and that the notes could not be found at the bank where they were made payable when he undertook to pay them after the discount negotiations failed.

Under section 6835, Compiled General Laws of Florida, 1927, presentment for payment, to be sufficient, must be at a proper place; and under Section 6836, Compiled General Laws of Florida, 1927,

"Presentment for payment is made at the proper place where a place of payment is specified in the instrument and it is there presented."

Section 6832, Compiled General Laws of Florida, 1927, also provides as follows:

"Presentment for payment is not necessary in order to charge the person primarily liable on the instrument;

but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer or indorsers.''

It is also observed that the pleadings fail to show that plaintiffs' election to ''exercise the option to consider all unpaid notes immediately due and payable'', was ever brought to the knowledge of the defendant prior to his offer of payment on September 13, 1929. The bill was filed September 26, 1929. The complainants' decision to ''exercise the option'' must be brought home to the defendant in some effective manner *before* payment is tendered otherwise the option is defeated.

It has been held by this court that the ''filing of a bill *alleging* that complainant exercise his option to declare the whole mortgage debt due is ordinarily sufficient to show exercise of the option.'' Treb Trading Co. v. Green, et al. 102 Fla. 238; 135 So. 510. See also Prince v. Mahin, 73 Fla. 525, 74 So. 696; Kreiss Potassium Phosphate Co. v. Knight, supra; Meridith v. Long, 96 Fla. 719, 119 So. 114. It was also held in the case of Warren v. Greevey, 87 Fla. 46, 99 So. 247, that it is competent for the parties to agree that upon failure in the payment of interest or the breach of any other condition by the mortgagor the mortgagee shall have ''the option of declaring the principal sum to be due and proceed to foreclose for the entire sum due.''

The only reason for sustaining the authority to foreclose the *whole indebtedness* for failure to make a payment is by virtue of the authority given by the option contained in the accelerating clause of the mortgage. In the instant case the bill alleges that on account of the failure of defendant to comply with the terms and provisions of the mortgage ''that your orator did declare the entire indebtedness due in its entirety, together with due and legal interest thereon, and placed the said principal notes

in the hands of their solicitor * * * for collection and foreclosure in case same were not immediately paid.''

In the case of Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751, it was said:

"Until the holder of notes secured by a mortgage which contains a provision that if default be made in the payment of any sum of money as therein provided it shall be optional with him to consider the whole indebtedness due and payable, exercises the option, though there are payments past-due, the payor has the right to make a tender of such payments, and if a proper tender is made and kept good, the right of the mortgagee to declare unmatured payments due and payable is defeated. The mortgagee cannot just in his own mind determine to exercise the option and make it effective. He must either communicate his decision to the payor or manifest his election by some outward act.'' See also case of Gus' Baths Inc. v. Lightbown, 101 Fla. 1205, 133 So. 85.

It appears from the above case that *until* a holder of notes secured by a mortgage "exercises the option", though there are payments past due, the payor has a right to make a tender of such payments and if made and kept good the right of the mortgagee to declare unmatured payments due and payable is defeated. It also holds that "the mortgagee cannot just in his own mind determine to exercise the option and make it effective," but he "must either communicate his decision to the payor or manifest his election by some outward act.'' The question therefore arises: Does the mortgagee effectively exercise the option by merely informing the mortgagor that the notes have been "placed in the hands of his attorney for collection" and foreclosure "in case same were not immediately paid"? Our conclusion is that it does not.

Until a person liable for a past-due payment has notice, constructive or otherwise, that the holder *has* "exercised the option to accelerate the whole indebtedness due" the

person liable for such past due payment should be permitted to pay it.

"It is apparently well settled in most jurisdictions that where the maturity of the debt, or foreclosure of the mortgage on default, is made optional with the mortgagee, some affirmative action must be taken by him evidencing his election to take advantage of the accelerating provision, and that until such action has been taken, the provision has no operation." 19 R. C. L. 496, Sec. 292. See cases there cited. See also 41 C. J. 851, Sec. 1036.

A portion of the answer in the instant case, exceptions to which were sustained, sets up that on September 12, 1929, defendant "for the first time" was advised that mortgagees "had placed the matter in the hands of their attorney Cody Fowler for collection;" that immediately upon receiving this information "he did tender to said attorney the full amount of said two notes" which was "flatly refused with the statement that the entire indebtedness had been declared due."

If the tender was made on September 12, 1929, and refused, for reasons other than that they were not good for the cash, the portion of the answer setting forth such tender before defendant had any notice constructive or otherwise that complainants had already exercised their option to declare the whole indebtedness due, then such portion of the answer was not subject to an exception for impertinence, as defendant would have the right to show that he tendered the payment *before* such election to declare the whole indebtedness due.

Directing our attention to the second point with reference to the minimum ($37,500.) insurance coverage provided in the mortgage, the question arises that: if the defendant, after repeated trials, was unable to induce any company to insure the property in the amount provided by the mortgage, would such failure constitute such a de-

fault as would give legal authority to complainant to declare all amounts due and proceed to foreclose?

Such a clause having been inserted for the benefit of the mortgagees it should, under the general rule, be strictly construed against them. It would seem therefore that any covenant in a mortgage to keep the property insured in a given amount, in the absence of a clear provision to the contrary, should be construed to mean that the mortgagor will procure it if obtainable, and that such covenant is contingent upon the ability to procure the stated amount.

The answer states that after repeated attempts defendant was able to procure insurance only in the amount of $20,000.00 and alleged facts upon which assertion is based. We are of the opinion that the portion of the answer with reference to the insurance was not insufficient as against exceptions of complainant for impertinence.

It was therefore error to sustain exceptions to the two portions of the answer, the substance of which are given above.

The order appealed from is reversed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the order of the court below should be, and the same is hereby, reversed.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.