14-4336-cv
*Curtis v. Cenlar FSB*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand sixteen.

PRESENT:  JOSÉ A. CABRANES,
          RAYMOND J. LOHIER, JR.,
          SUSAN L. CARNEY,
                    *Circuit Judges.*

---

THOMAS M. CURTIS,

       *Plaintiff-Appellant,*

       v.                                                        14-4336-cv

CENLAR FSB, D/B/A CENTRAL LOAN
ADMINISTRATION & REPORTING, CENLAR AGENCY,
INC., FEDERAL HOME LOAN MORTGAGE CORP.,

       *Defendants-Appellees,*

AMERICAN SECURITY INSURANCE CO., AND
ASSURANT, INC.,

       *Defendants.*

---

**FOR PLAINTIFF-APPELLANT:**        SANFORD F. YOUNG, Law Offices of
                                    Sanford F. Young, P.C., New York, NY.

**FOR DEFENDANTS-APPELLEES:**     BRADLEY L. MITCHELL, Stevens & Lee, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Denise Cote, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Plaintiff-appellant Thomas M. Curtis ("plaintiff" or "Curtis") appeals the District Court's November 6, 2014 judgment in favor of defendants-appellees Cenlar FSB, Cenlar Agency, Inc. (jointly, "Cenlar"), and Federal Home Loan Mortgage Corporation ("Freddie Mac") (jointly, "defendants"). We assume the parties' familiarity with the underlying facts, the case's procedural history, and the issues on appeal. Reviewing *de novo* the District Court's grant of summary judgment, *see Schoenefeld v. Schneiderman*, --- F.3d ---, 2016 WL 1612845, at *3 (2d Cir. Apr. 22, 2016), we affirm.

Curtis's principal argument on appeal is that defendants breached the parties' mortgage agreement by procuring wind insurance for Curtis's Florida property after Curtis refused to purchase it himself (a practice known as "force-placing").[1] According to Curtis, the mortgage does not require him to insure his property against wind damage.

We disagree. Under Florida law, which governs this dispute, an unambiguous contract "must be given effect as written." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002). The relevant provision of the mortgage contract reads as follows: "Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance." J.A. 253. The provision's final clause thus empowers the "Lender" to identify hazards for which it requires insurance and obliges Curtis to purchase insurance in accordance with the "Lender's" demands. The parties agree that Freddie Mac

---

[1] Defendants argue that Curtis's claims for injunctive and declaratory relief (but not his claim for damages) are moot, because one of the two buildings on the property (the main house) has been destroyed by fire during the pendency of this litigation, and defendants are not requiring Curtis to maintain wind coverage for the remaining structure (the guest house). We think that the case remains justiciable. Though the evidence on the point is contradictory, it appears that the force-placed policy provided coverage for the guest house as well as the main house (albeit in a lower amount). *See* J.A. 315, 479 ¶4.b. That defendants have voluntarily dropped their requirement that the guest house be insured does not deprive us of our authority to decide the dispute. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000) ("A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case.").

qualifies as the "Lender," and the undisputed evidence shows that Freddie Mac (through the "Interim Servicing Master Agreement" that governs its relationship with Cenlar, the mortgage's servicer) requires borrowers to maintain wind coverage. J.A. 278, 293. Accordingly, the agreement's plain terms require Curtis to purchase wind insurance. Curtis having failed to do so, defendants were within their rights to purchase it for him. *See* J.A. 253 (mortgage provision reading, "If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense").

Curtis's arguments to the contrary are unavailing. He contends, first, that the mortgage is most naturally read to exclude wind as a hazard for which coverage may be required, on the theory that the specific examples in the provision—earthquakes and floods—limit the general term "any other hazards." We cannot agree. The agreement requires Curtis to obtain coverage for "any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance." J.A. 253. The inclusion of the phrase "including, but not limited to" obviously signals that the list of hazards ("earthquakes and floods") is illustrative, not exhaustive. *See Fla. Power & Light Co. v. Fla. Pub. Serv. Comm'n*, 31 So. 3d 860, 865 (Fla. 1st Dist. Ct. App. 2010) (construing a list of categories in a statute as illustrative rather than exhaustive because it was preceded by the phrase "includes, but is not limited to").

Nor are we swayed by Curtis's reliance on *Clay v. Girdner. See* 138 So. 490 (Fla. 1931). In that case, a mortgage agreement required the borrower to insure his property in the amount of $37,500; despite the borrower's best efforts, he found himself unable to obtain insurance in excess of $20,000. *Id.* at 491-92. The Florida Supreme Court thwarted the lender's attempt to foreclose, reasoning that when a mortgage clause requires the borrower, on pain of default, to maintain insurance in a given amount, the clause will, "in the absence of a clear provision to the contrary . . . be construed to mean that the mortgagor will procure it [only] if obtainable." *Id.* at 494.

*Clay* has nothing to say about this dispute. Although the District Court assumed (as we will assume) that Curtis was unable to purchase wind insurance himself, the similarity between the two cases ends there. Unlike the borrower in *Clay*, Curtis did not simply pledge to obtain such insurance as the lender may have required, with nothing more said about the matter. Rather, the parties not only agreed that Curtis would secure all required coverage, but expressly made provision for any failure on his part to do so by agreeing that Freddie Mac would force-place coverage if Curtis did not procure it himself. *See* J.A. 253. *Clay*'s rule of construction does no more than save a borrower from foreclosure (in the absence of clear language authorizing it) as a penalty for failing to perform an impossible task; it does not here deprive defendants of their bargained-for authority to force-place coverage.

Curtis also contends that the mortgage agreement, if read as defendants urge, would repose in Freddie Mac too broad an authority to define the borrower's obligations, empowering it to require coverage "arbitrarily and without reason." That is not necessarily so. Under Florida law, when "the

3

terms of [a] contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith . . . limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Speedway SuperAmerica, LLC v. Tropic Enters., Inc.*, 966 So. 2d 1, 3 (Fla. 2d Dist. Ct. App. 2007) (internal quotation marks omitted). It has been held that a lender's bad-faith exercise of its contractual power to force-place insurance coverage violates this duty and breaches the mortgage contract. *See, e.g.*, *Treece v. JP Morgan Chase Bank, N.A.*, No. 14 Civ. 22602, 2015 WL 3935761, at *2-4 (S.D. Fla. June 26, 2015); *Hamilton v. Suntrust Mortg., Inc.*, 6 F. Supp. 3d 1300, 1310 (S.D. Fla. 2014). But we have no occasion to opine on whether or how the duty of good faith might limit the lender's apparently broad power to force-place coverage: Curtis neither argues that Freddie Mac violated any such duty nor directs us to record evidence tending to suggest that it did.

We further conclude that the District Court properly entered judgment for defendants on Curtis's claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* Curtis argues that these claims should have survived because the verified complaint's allegations of FDUTPA violations "are sufficient as against Cenlar." Pl's. Br. 29. Though we may treat Curtis's verified complaint "as an affidavit for summary judgment purposes," the allegations contained therein can suffice to defeat summary judgment only insofar as they were made on personal knowledge. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also* Fed. R. Civ. P. 56(c)(4). The relevant allegations in the verified complaint—all made "[u]pon information and belief"—are merely speculative, and by themselves insufficient to defeat defendants' motion. *See* J.A. 239-241.

Finally, we decline to consider Curtis's argument that Cenlar breached the mortgage agreement by refusing to accept certain payments. This allegation appears nowhere in the complaint and was not addressed in the District Court's ruling. Curtis mentioned it in passing in an affidavit produced in support of his motion for partial summary judgment, *see* J.A. 389-90, but never moved to amend the complaint or otherwise endeavored to put his claim before the District Court. *See Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) ("[P]laintiffs who fail[ ] to include a claim in their complaint can move to amend the complaint[,] . . . . [but] a district court does not abuse its discretion when it fails to grant leave to amend a complaint without being asked to do so."). Accordingly, this argument has been forfeited.

## CONCLUSION

We have reviewed all of Curtis's arguments on appeal and find them to be without merit. We thus **AFFIRM** the November 6, 2014 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4